I'm arguing for the defendants, Real Estate Mortgage Network, Security Atlantic Mortgage Company, Noel Chapman and Samuel Lamparello. I'd like to reserve two minutes of time for rebuttal. The defendants are appealing to district courts June 26, 2019, order denying defendants motion to compel arbitration and finding that defendants waived their right to enforce their arbitration agreements. Let me ask this. When was the first opportunity that your client had to raise the issue of the arbitration clause? It was first raised during a discovery discussion between the parties in September of 2014. That was the first raise. So the question was when was your first opportunity to raise it? Your realistic opportunity given what the pleadings were? Arguably, well, given the state of the pleading, there was no opportunity to procedurally raise it until December 2017 when the first two options of arbitration agreements joined. The question is whether you should have raised it. Don't you agree it's significant that while adjacent plaintiffs had arbitration agreements and knew of their agreements from the start, Ms. Thompson did not have any such agreement and did not know the other possible plaintiffs did execute arbitration agreements until you revealed this fact years, years after she filed the complaint? The revelation wasn't, though it did come, the complaint was filed in March 2011. The defendants filed two motions to dismiss on completely unrelated grounds going to the allegations as made by plaintiffs in the complaint that they weren't sufficient against the individuals and employers and to convey successor liability. The first was granted and then plaintiffs filed an amended complaint and then defendants filed a motion to dismiss an amended complaint on similar grounds. So any mention of the arbitration agreement, which plaintiffs didn't have, would have been completely irrelevant at that time. And then even if you ultimately prevail on the actual scope of a punitive collective class, don't you agree that the possible participation of individuals with arbitration agreements and the effect on such agreements were clearly issues before you revealed the existence of the arbitration agreements? You played it fast and loose, let's put it that way, no question about it. Your Honor, I disagree. This case is not one where, like so many, where waiver is considered, where defendants were hedging their bets and seeing where they would be more successful. The arbitration agreements in this case had the very probable likelihood that they would never come into play. The arbitration agreements were only given to a small pool of punitive class members, many of whom, it's completely impossible, possible that they never would have joined this action. We are now nine years into litigation and only two have. So this wasn't a significant issue in terms of... I thought of how many, or two out of how many possible. There are two who have joined now. There are only eight plaintiffs in this case. But in looking at the pool of underwriters who were in New Jersey, as the geographic scope has been limited through litigation, there are only five more who even have them. Okay. Well, didn't you actually suggest in your response to Mrs. Thompson's first motion for equitable tolling that there was nothing to stop potential members of the punitive class from opting in or filing their own lawsuit? Wasn't this misleading, to say the least, without you at least mentioning the existence of the arbitration agreements? Your Honor, I think in looking at this litigation with the benefit of hindsight, obviously I understand that point. But at the time, we were defending against a motion to toll the statute of limitations that was based on the procedural posture somehow impeding punitive class members from joining. And so in making that assertion, the point was simply that defendants hadn't done anything but pursued the procedural rights they have to pursue in a litigation that would otherwise prevent those punitive class members who were eligible to join from joining. It's not as if our filing a motion to dismiss has somehow obstructed that. In hindsight, it may have been an artful not to also state that they could have joined the litigation or filed their own arbitration claims. But from the defendant's strategy at that time, it was merely to rebut plaintiff's argument that our filing of motion to dismiss at that time had somehow prevented or created some sort of extraordinary circumstances that prevented plaintiffs who were eligible from joining and justifying tolling. Well, I don't know. Instead of calling it inartful, I would call it your conduct misleading. It just seems true. You held cards. You didn't want anyone to know what cards you were going to spring on them. It's for that reason that both the backstreet judge and the district judge found your conduct to be totally opportunist. Your Honor, I beg to differ. There was no opportunity there. Arbitration agreements would have somehow made the craft smaller at that point or dissuaded plaintiffs from pursuing the litigation. That would have been to defendant's advantage. Why wouldn't we have advanced it? The point was that... I'm not sure I follow that argument. If the arbitration agreement would have inured to your advantage, but how would it have... I see you're saying that you've gotten that out of court and you have been anxious to get out of court and into arbitration because that's what you had bargained for. That's what you're saying. Right. There was no... It certainly wasn't opportunistic. It didn't give defendants any advantage not to raise it at the time. It simply just wasn't relevant at the time. To your point, defendants weren't making the point at the time when they said that there was nothing that the defendants had done to dissuade or somehow obstruct the plaintiffs from joining. That was with respect to their conduct thus far at the litigation, which was what was at issue in the motion for tolling. It's Judge Bibas. Could I ask you about Chaston? You're relying a fair amount on it, but this case is not exactly futility. You could have mentioned this arbitration clause earlier and disclosed it. Chaston's holding doesn't exactly reach this case. I believe it does. In Chaston, the Third Circuit's reasoning was that it's not logical to apply the Hawksworth factors, which as you well know, are the standard six-factor test that the Third Circuit uses, that it wouldn't be logical to apply those in an instance where essentially a litigant's hands are tied because moving, otherwise enforcing or attempting to enforce an arbitration agreement would be futile. The court there specifically defines futility as an instance where it would be almost certain that a motion would be denied. Certainly, we have that here. That's what the defendants anticipated. The district court expressly held that to be true in the June 29, 2015 order denying plaintiff's motion for tolling. The court expressly held that it wouldn't consider a motion to compel prior to any opt-ins with arbitration agreements joining because to do so would be to give an advisory opinion. That solidifies it absolutely would prior to December 28, 2017 when the two opt-ins with arbitration agreements actually joined. In addition to that, it's not as if this wasn't or plaintiffs weren't on notice of the arbitration agreement until they actually joined. The fact here are that plaintiffs were on notice of the arbitration agreement as soon as the case was remanded and months after the case was remanded, once the parties actually started getting into the litigation on the merits. I think it's significant here that unlike a change in the law where a litigant would essentially be guessing whether or not a motion to compel would be futile and guessing how the court would rule, we knew how the court would rule. We were right that the court held that it wouldn't have entertained that motion prior to any opt-ins with arbitration agreements actually joining. Once that happened, the defendants promptly on the next motion filed, they joined in December 28, 2017. The next motion filed was our defendant's opposition to plaintiff's motion for conditional class certification and our opposition was filed on February 2nd. In it, defendants advised that they would be moving to compel arbitration for those two new opt-ins, which defendants did on February 16th. We're talking about only a few weeks from when it became a viable defense to when defendants actually moved to compel. I think what can't be overstated in this case is that there simply was no prejudice to plaintiffs. Plaintiffs have been aware of the arbitration agreement since September of 2014, and this was never an instance where these arbitration agreements could have uprooted a lengthy and time-consuming and costly litigation from federal court into arbitration. This class action or collective was always going to go forward in federal court. The only difference is that there may have been a handful of individuals who opted in who were then compelled to arbitration. As I said before, right now, that's two. Looking at the poll based on the geographic scope, there are only five additional who have arbitration agreements. That's not a overall class or collective here. You may have answered this already. How much motions practice was there before the arbitration clause was asserted? There were two motions to dismiss, an initial and then a motion to dismiss the amended complaint, and then the case was pending before the Third Circuit for, I believe, 18 months, and then it was remanded. After it was remanded, there was one more motion. In that time period, plaintiffs moved to total statute of limitation, but after the remand, defendants answered the complaint and discovery commenced. Further, just to expound a bit on plaintiffs' arguments that this has created some type of realistic that plaintiffs would have not pursued the case or the named plaintiffs would have not accepted settlement had she known or had they known about the arbitration agreement. Again, if that were the case, if defendants believed that to be true, we would have brought them up sooner. Rather, this was just a small part of the overall defense strategy, a defense strategy against the litigation that was always going to be in federal court. Even if this court decides to apply the Hawksworth factor, still there can be no waiver found as defendants timely raised the issue once the parties started litigating on the merits. They moved to compel as soon as possible and only contested the motions and engaged in motion practice and discovery as required to assert their defense comprehensively against the rest of the court. I didn't hear what you said, Greg. Is that the time? Yes. Counsel's time has expired. Okay. And I think you have reserved some time anyhow. That's correct. Thank you very much, Ms. Batista. Thank you, Ron. Mr. Schley? Yes, Your Honor. Your Honors, this is Mitchell Schley. I represent Plaintiff Patricia Thompson and as well as the Rule 23 putative class, as well as the FLSA collective with respect to the claim that overtime was not paid to employees who work more than 40 hours a week. I have some prepared remarks. However, what I have heard is so deviate so much from the record that I have to- Show yourself, Mr. Schley. Let me ask you about her point. As her arbitration clause, her last arbitration clause, why wouldn't they have asserted it as soon as they were on notice that the arbitration clause was being ignored by some plaintiff? Why would not they have asserted that? What would have been the motive for remaining silent? The motive here for not mentioning it to plaintiffs nor the court in three and a half years is because what the defendants did, as the court below found specifically, was to play tails I win, heads you lose. They tried vigorously to get the case dismissed and hoping that they would, and they did twice, and then they thought it would stand and then third circuit reversed. So they were hoping that the case would be knocked out. So they kept it to themselves. Meanwhile, no one knew about this. And then after, so now they said, oh, now the case is real. Plaintiff has spent untold dollars, time, the courts, district courts, written multiple decisions. The third circuits wrote a massive decision on this case. Then they said, okay, now we'll let you know. So what they did was exactly the whole point that arbitration was created, was created to take the courts out of the process and give it to an arbitrator. But what plaintiffs, what defendants did here was cynical and unacceptable and has been rejected by this court and all courts across the country. Now, counsel, you might be right. You know, your brief highlights, they've changed their story. They've said some misleading things, but why is that fit within waiver doctrine? That sounds like an estoppel argument based on misconduct, but the district court never addressed that. You know, they asserted, they thought arbitration reasonably at the first opportunity they could. So the logic, if not the holding a chest and applies, why don't we leave this as an estoppel matter for district court rather than stretching our waiver doctrine? Uh, your honor, this is not a stretch of the waiver doctrine. Uh, one Hawksworth third circuit has said all set part has set out six factors, but we don't get to Hawksworth unless we get past Chaston. And so I'm asking about the logic of Chaston says, you know, I'll address it. Chaston. Okay. Okay. I'll tell you why Chaston is not route is not, it's not applicable here and why it's so different in Chaston, the plaintiff and the court knew from the point, the complaint was filed that arbitration agreements were present. They knew they just simply said that since the law at the time was that bilateral arbitration was no, was not effective until the change in the law by Supreme court's decision, AT and T that effectively the arbitration agreements that everyone knew about could not be utilized. We didn't know about the arbitration agreement. Let's say you could think you could not have arbitrated and they could not have arbitrated that early. Correct. You're not disputing that you couldn't have arbitrated before late 2017, right? Yes, but this is the, but there's a bigger point and that's what Hawksworth and progeny deals with. The issue isn't only whether they, we could have arbitrated. The issue is what was the effect of concealing the arbitration on the parties and the court. It created prejudice. Why? Because this case was filed as a class action. A class action is a kick is, is not a situation where you have to wait for someone to opt in. That's an FLSA opt in procedure, which means you have to opt in a class action is you have to opt out. So if we obtain class certification, every single person would be in going back to the day the complaint was filed. But they didn't obtain it initially though. Exactly. But the point is, is that the defendants have a plaintiff rather has a right to know under the oldest under the law, which is, which is the third factor in Hawksworth. When they're conducting their case, they have a right to know that this case may well end up in arbitration. Critically, critically, your honor plaintiff. I mean, defendant has stated his argument, a fact, a crucial fact that is non-existent in the record. It's just been made up today. Okay. Well, let me, let me say five people are involved. This is critical. I beg you to let me say this. We get to ask some questions. I want to ask about prejudice. You've been putting a lot of emphasis on prejudice. It's a fair point for you, but Estoppo also deals with prejudice. So I want to understand why we should deal with prejudice through waivers. So my question is, is waiver a remedy for just any prejudice or is waiver doctrine, a remedy for this specific kind of prejudice that results when the party has the right and power to compel arbitration decides I'm going to have it both ways, try out court if it goes well, and then if not, then I'll go over to arbitration. So what, which is it and why do you think it's a remedy for any prejudice or just that kind of prejudice? No, it's prejudice. No, it's the prejudice that involved here is as follows. This is the prejudice. The prejudice is, is that in the absence of knowing about arbitration, plaintiff engaged in a lengthy litigation, spending untold dollars and time. And here's the key. This plaintiff turned down offers of settlement because she believes specifically that she would be able to represent the group. She selflessly did that. Had she been told, and had we known that arbitration was out there and that she would have rejected, she would have accepted offers. Take an inhale, hold it in, slowly breathe out and relax. At the point you're talking about, the people with the arbitration clause were not part of the action though. They're never part of the act. Wait a second. They were part of the action. Here's the key point. Yes, I'll be happy to address it. According to counsel, counsel stated to your honors that there were five people involved that were, that signed arbitration and that therefore it was a tiny number and therefore it wouldn't have had much effect on the case. The case would have had to go forward anyway. That number does not appear in the record. It is a number that was created today. And the number is in, is in the record and it's at page two. It's referenced to page two of our opposition papers to your honors. And the number is 87. 87 employees signed arbitration agreements in the described class. Not five, 87. And that was in 2014, mind you. And since then, for the last six years, people are still signing them. So how many are there now? Who knows how many, but it's not five, it's 87. It is irresponsible for defendants to state a number that doesn't appear in the record and is adverse and is not even... Mr. Clay, Judge Bevis, can you cite any precedent, and I don't think the Sixth Circuit published case fits this criterion, but you can tell me otherwise, in which it held that a party waived its right to compel based on litigation conduct that happened before any potential arbitration downed plaintiffs to join the action. Is there a case that's on all fours with this case? Five minutes. Yes. They are cited in our brief. Which? To the court. I mean, I'll... I just don't have a top of my head, but I can tell you that there were numbers, the cases are cited in our brief to the district court and our briefs to your honors. It's a well-established notion. I mean, this is not new. This has been standard law for decades. Before a plaintiff had joined the action, where there's no opportunity to arbitrate before that person joined, you say that's settled for decades? Yes. Okay. Without question. But again, I emphasize that the point that the defendant has just made to your honors is that there were simply a handful of arbitration agreements. So what's the big deal? The case was going to go forward in federal court anyway. When I'm pointing out to you, it's a matter of record that 87 agreements were signed, not five. That, to me, is... I mean, change of everything. Now you're breathing slowly. Let me just mention, I'm not sure how many times you've argued this for us. You've got to pause to let us ask questions. It's very irritating to try to ask a question and the lawyer continues speaking, continues speaking. I apologize for following your direction. It is trickier on the phone, I understand. You can't see the visual cues, but it's just... I will adhere to your request and I apologize. No, the exaggeration is not helpful. The luminous opinion, the massive opinion, I think you said, the court is nine pages long. The opinion itself is nine pages long, our prior opinion. I have 740 and I have 742. Are you talking to me, your honor? Yes. You mentioned earlier, you talked about all the work that was generated before this was asserted and you're saying that was part of the prejudice and you talked about the third circuit had come out with this. I think you didn't say humongous. I think you said massive opinion. And as I'm saying, the opinion is nine pages long. Just the exaggeration, the only point I'm making, the exaggeration does not help your argument. Okay. I'm sorry, but I don't see it to be nine pages long. It was a presidential opinion involving multiple issues of first impression. The court went through successorship, a joint employer. It went through individual responsibility of a manager. It was a huge undertaking and putting that aside, there were three district court opinions written even before that decision. And all of that could have been avoided had we been told about this thing, because this would have been settled upfront early on. And here we are nine years later and we wouldn't be here today, but for the concealment of the arbitration. Why? Because once we were into it for three and a half years, we had to go forward. It was no turning back. So we've spent nine years litigating a case that could have been resolved based on an offer of judgment made a couple of months after the plaintiff filed the case. I mean, if that's not prejudiced, I don't know what is. One minute left. Anything else you want to tell us, Mr. Story? No, that's fine. Okay. Thank you very much. We do understand your argument and I think, Ms. Batista, we have some time. Yes, Your Honor. Thank you. I just want to quickly address this case would be in the exact same position if defendants had disclosed the arbitration agreements during the period where motions to dismiss were being filed and were up on appeal. If defendants believe that it wasn't a very small part of their strategy, which it always has been, of course we would have revealed earlier to plaintiff's counsel to suggest that plaintiff's counsel would have, I don't know, withdrawn this action or not pursued it had he known about those arbitration agreements that still have very little impact on the case. It's completely disingenuous. And if defendants had believed that he wouldn't have pursued an appeal, we would have revealed them. But the point is that they weren't that impactful. And just as to the number of... They weren't what? I didn't hear that. They weren't that impactful and they didn't present this case. This case was always contemplated as a class and or collective action that was going to go forward in federal court. The numbers that plaintiff's counsel has brought up, the 87 only is in relation to how many arbitration agreements were produced in discovery. That is not reflective of the number of individuals who are potentially part of this class, especially in light of litigation and the narrow geographic scope. And finally, I just want to make the point that similarly, certainly, if we thought that the arbitration agreements would have had an effect during settlement negotiations, again, it would only have been to defendant's advantage to bring them up. Plaintiff's assertion that it was somehow advantageous for us to keep them quiet simply doesn't make sense. The motion to dismiss had nothing to do with those arbitration agreements and wouldn't have been affected by them. Thank you, Ms. Batista. Thank both counsels for arguments and we'll take them later under advisement.